**Tyrone AGRO, et al.**

v.

**PUBLIC UTILITIES COMMISSION.**

Supreme Judicial Court of Maine.

Argued May 13, 1992.
Decided July 31, 1992.

Joel C. Martin (orally), Petrucelli & Martin, Linda C. Russell, Portland, for plaintiffs.

Carol A. MacLennan (orally), Glen S. Goodnough, Public Utilities Com'n, William Black, Public Advocate, Augusta, Richard Owens, Boston, Mass., for defendants.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD and COLLINS, JJ.

CLIFFORD, Justice.

Plaintiffs[1] appeal from an order of the Public Utilities Commission (PUC) dismissing their complaint against New England Telephone Co. (NET). Plaintiffs argue that the PUC exceeded its statutory authority by dismissing their complaint, a complaint that has substantive merit, on the basis that Plaintiffs could obtain complete relief in other dockets currently pending or soon to be brought before the PUC. Because

---

**1.** Plaintiffs consist of eleven individuals and six businesses, including Pine Tree Telephone and Telegraph Company.

the dismissal is not warranted by the language and history of the statute, we vacate and remand the case to the PUC.

Plaintiffs are telephone customers who reside in the Gray/New Gloucester calling area that is serviced by Pine Tree Telegraph and Telephone Company (Pine Tree). The basis of their complaint is that, unlike the inhabitants of other similarly situated communities that surround the city of Portland, they must pay a toll to make a telephone call to Portland. Similarly, because the inhabitants of those communities surrounding Portland must pay a toll for calls to the Gray/New Gloucester calling area, those inhabitants are induced to call businesses in Portland rather than businesses in Gray and New Gloucester. Therefore, since NET sets the toll rate schedule for intrastate toll calls, Plaintiffs complain that NET is discriminating against them in their toll rates.

Plaintiffs filed their complaint with the PUC pursuant to 35–A M.R.S.A. § 1302 (1988).[2] That section provides that when a complaint is made by ten aggrieved persons that the rates, charges, tolls, or services of a public utility are in any respect unreasonable, unjustly discriminatory, or insufficient, the commission "shall, with or without notice, investigate the complaint."

35–A M.R.S.A. § 1302(1). Having satisfied itself that the complainants are responsible persons, *id.*, the PUC must give notice to the utility complained against. *Id.* § 1302(2). If, after the utility files a response, the PUC is satisfied that the utility has taken adequate steps to remove the cause of the complaint or that the complaint is without merit, the PUC may dismiss the complaint. *Id.* If the PUC is not so satisfied, it must promptly set a date for a public hearing.[3] *Id.* The PUC must render a decision on a ten-person complaint within nine months of the filing of the complaint. *Id.*

After Plaintiffs filed their complaint and NET filed a response, the PUC dismissed Plaintiffs' complaint as being without merit under section 1302(2). Although the PUC concluded that certain aspects of the complaint's allegations of discrimination did not have substantial merit, the real basis for its dismissal was procedural, i.e., that the issues raised by the complaint were better and more efficiently addressed in other proceedings already before the PUC. At the time of Plaintiffs' complaint, there were two pending dockets before the PUC, one, opened in 1988, that dealt with a study of alternative service plans in an effort to deal with the toll rate inequities caused by

**2.** 35–A M.R.S.A. § 1302 provides in pertinent part:

**1. Filing a complaint.** When a written complaint is made against a public utility by 10 persons aggrieved that the rates, tolls, charges, schedules or joint rate or rates of a public utility are in any respect unreasonable or unjustly discriminatory; that a regulation, measurement, practice or act of a public utility is in any respect unreasonable, insufficient or unjustly discriminatory; or that a service is inadequate or cannot be obtained, the commission, being satisfied that the petitioners are responsible, shall, with or without notice, investigate the complaint.

**2. Processing of complaint.** The commission, immediately upon the filing of a complaint, shall notify in writing the public utility complained of that a complaint has been made and of the nature of the complaint. The utility shall file its response to the complaint within 10 days of the date of the notice of complaint is issued. After receipt of response, if the commission is satisfied that the utility has taken adequate steps to remove the cause of the complaint or that the com-

plaint is without merit, the complaint may be dismissed. If the complaint is not dismissed, the commission shall promptly set a date for a public hearing. The commission may allow for all parties to attempt to resolve the complaint to their mutual satisfaction. If a mutually satisfactory resolution does not appear to be forthcoming, the hearing shall be held on the complaint pursuant to section 1304. The commission may not enter an order affecting the rates, tolls, charges, schedules, regulations, measurements, practices or acts complained of without an opportunity for public hearing. In the absence of an informal disposition pursuant to Title 5, section 9053, the commission shall render a decision upon the complaint no later than 9 months after its filing.

**3.** After the hearing date is set, the case may still be dismissed if the parties resolve the complaint to their mutual satisfaction or, if pursuant to 5 M.R.S.A. § 9053 (1989), the case is disposed of by stipulation, agreed settlement, consent order, or default of a party. 35–A M.R.S.A. § 1302(2) (1988).

the existence of the independent telephone companies in Maine, and another that concerned an investigation of alleged excess profits earned by Pine Tree because of the toll rate schedule. The PUC concluded that Plaintiffs' complaint raised issues that were currently being handled in these other dockets and, to the extent that NET's toll rates were implicated by the complaint, the issue could be handled only in a comprehensive rate case against NET, such as was expected to begin later that year. Therefore, the PUC ordered the dismissal of Plaintiffs' complaint, granted them intervenor status in the investigation of Pine Tree's earnings, and granted them interested party status in the ongoing investigation of alternative calling services.[4] After the PUC denied Plaintiffs' motion for rehearing, Plaintiffs appealed to this court. *See* 35–A M.R.S.A. § 1320 (1988).

■ The PUC urges us to accept its construction of the term "without merit" to mean "not meriting a separate proceeding," thereby allowing the PUC to dismiss complaints it concludes raise issues that are redundant or are otherwise untimely. Plaintiffs argue that such a construction is adverse to the statutory structure and would create essentially unreviewable decisions by the PUC. We agree that the statute cannot be read as broadly as the PUC suggests. While it is true that a court will defer to an administrative agency's construction of a statute administered by it, that deference "must yield to the fundamental approach of determining the legislative intent...." *Central Maine Power Co. v. Maine Public Utilities Comm'n*, 436 A.2d 880, 885 (Me.1981). We look to the wording of the statute and the legislative objective of the statute. *State v. Niles*, 585 A.2d 181, 182 (Me.1990).

Since its inception, the PUC has always been required to respond to a complaint brought by ten responsible persons against the actions of a public utility. *See* P.L. 1913, ch. 129, §§ 41, 42. Until 1983, however, the PUC was not required to proceed

with an investigation into a ten-person complaint unless it deemed that a hearing was "expedient." R.S. ch. 44, § 55 (1954). In 1983, the "expedient" language was removed and other language was added to require the PUC to set the hearing "promptly." P.L.1983, ch. 141, §§ 1, 2. The purpose of these changes was to provide "for the expeditious processing of consumer complaints and give them the same priority as a utility's request for a rate increase." L.D. 961, Statement of Fact (111th Legis.1983); *see also* Legis.Rec. 477 (1983) (statement of Sen. Baldacci).

In 1985, wording was added to the statute that allowed dismissal of a complaint that was "without merit." P.L.1985, ch. 629, § 7. The wording was added as a part of other amendments made to facilitate "informal resolution of 10–person complaints against utilities without the need for a formal hearing in every case." L.D. 1723, Statement of Fact (112th Legis.1985). There is, however, no definition in the statute or its legislative history of the phrase "without merit."

■ It is clear that the legislature intended to require the PUC to promptly and seriously consider consumer complaints brought to its attention through a section 1302 complaint. Rather than allowing the PUC to ignore complaints on the basis of expediency, the legislature has required the PUC to hold a prompt public hearing on every ten-person complaint provided that it is brought by responsible persons, has some substantive merit, and no settlement of the complaint occurs. In this context, the phrase "without merit" must be understood to mean that there is no statutory basis for the complaint, i.e., that the PUC has no authority to grant the relief requested or that the rates, tolls, or services are not "in any respect unreasonable, insufficient, or unjustly discriminatory ... or inadequate." 35–A M.R.S.A. § 1302(1).

■ The PUC does not take the position that Plaintiffs' complaint raises no cognizable issues properly submitted to its authori-

---

4. An intervenor becomes a party to the case and is entitled to be heard and to subpoena witnesses. 35–A M.R.S.A. § 1304(4) (1988). An inter- ested party is entitled only to receive notice of the proceedings. 35–A M.R.S.A. § 1304(1).

ty; they admit that the issues raised by Plaintiffs' complaint already occupy the PUC's attention in other dockets. Moreover, the PUC does not appear to contend that Plaintiffs' complaint lacks a factual basis. Rather, the PUC seems to assert that the issues raised by Plaintiffs' complaint are either too complicated or too far-reaching to be handled within its limited resources, including its current staff, in an expeditious manner in a separate proceeding within the nine-month time frame required by the statute. Although there may be justification for that assertion by the PUC, it does not provide a sufficient basis for dismissal of Plaintiffs's complaint.

■ This is not to say that the PUC does not have control over its own cases and substantial discretion as to the manner in which it addresses such complaints, conducts investigations, and generally administers its docket.[5] In view of the protection the statute accords to ten-person complaints, the PUC cannot dismiss outright such a complaint that the PUC admits has substantive merit, solely on the basis that it does not deserve separate consideration.

The entry is:

Judgment vacated. Remanded to the PUC for further proceedings consistent with the opinion herein.

All concurring.

---

**5.** For example, it may be possible for the PUC to combine investigations of or hold public hear-

ings on separate cases that deal with common issues.